1
2
3
4
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GUADALUPE FONSECA, et al.,                    Case No. 1:10-cv-00147 LJO DLB

12            Plaintiffs,                          ORDER ON DEFENDANTS' MOTION FOR
                                                   SUMMARY JUDGMENT
13        vs.
                                                   (Doc. 52)
14   CITY OF FRESNO, et al.,

15            Defendants.

16   _____/

17        Plaintiffs Guadalupe Fonseca ("Guadalupe") and Paula Fonseca ("Paula") seek damages from

18   Defendants City of Fresno ("City"), Mark Wilcox ("Officer Wilcox"), and Mike Trenholm ("Officer

19   Trenholm") for an altercation that took place between Guadalupe and law enforcement officers on or

20   around December 12, 2008.  Now pending before the Court is the motion for summary judgment filed

21   by the City and Officer Wilcox.  Plaintiffs have filed an opposition to the motion, to which the City and

22   Officer Wilcox have replied.  Upon careful consideration of the parties' submissions and the record in

23   this case, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment.

24   **I.       BACKGROUND**

25        **A.       Plaintiffs' Allegations**

26        Plaintiffs' allegations are as follow.  On December 12, 2008, Guadalupe, an adult male with a

27   mental disability, walked out of his house in Fresno, California to take out the garbage.  (Am. Compl.

28   ¶ 15.)  For no reason and without probable cause, Officers Wilcox and Trenholm detained and arrested

1

1   Guadalupe outside the doorway of the house.  (Id. ¶ 16.)  The officers did not advise Guadalupe that he

2   was under arrest, nor did they issue any warnings or commands.  (Id. ¶ 18.)  Paula, Guadalupe's natural

3   mother, witnessed the incident from inside the house and advised the officers that Guadalupe suffered

4   from a mental disability and was not a criminal.  (Id. ¶¶ 5, 19.)  Despite Paula's pleas, and despite the

5   fact that Guadalupe did not resist or flee, the officers grabbed Guadalupe, slammed him on the ground,

6   and proceeded to punch and kick him.  (Id. ¶¶ 20-22.)  As a result of the incident, Guadalupe suffered

7   emotional and physical injuries, including falling unconscious and remaining comatose for eight days.

8   (Id. ¶ 28.)  Paula also suffered a heart attack after she saw Guadalupe comatose in the hospital later that

9   night.  (Id. ¶ 30.)

10          **B.     Defendants' Statement of the Facts**

11          Defendants' assertions are as follows:  On December 12, 2008, at approximately 7:30 p.m.,

12   Officer Wilcox (an officer of the Fresno Police Department) and Officer Trenholm (an officer of the

13   California Highway Patrol) were on patrol as part of the Multi-Agency Gang Enforcement Consortium

14   ("MAGEC").  (Trenholm Depo. at 9:17-11:3; Wilcox Decl. ¶ 2.)  The two officers were driving

15   northbound on Clark Street in a marked California Highway Patrol car when they crossed upon

16   Guadalupe, who was dressed in dark clothes and walking slowly in the middle of the street.  (Trenholm

17   Depo. at 14:23-15:2; Wilcox Decl. ¶ 6.)  The two officers believed that Guadalupe was in violation of

18   California Vehicle Code section 21954(a), pedestrian outside a crosswalk, and therefore decided to make

19   contact with Guadalupe and advise him that his conduct was unsafe.  (Wilcox Decl. ¶¶ 8-9; Trenholm

20   Depo. at 29:22-30:4.)

21          Once the two officers stopped and got out of their car, they told Guadalupe to come towards them

22   in order to talk.  (Wilcox Depo. at 49:11-20; Trenholm Depo. at 20:19-22.)  Guadalupe turned around,

23   smiled at the officers, and began walking towards Officer Trenholm.  (Trenholm Depo. at 20:25-21:2.)

24   When he was almost five feet away from Officer Trenholm, Guadalupe sidestepped and veered to the

25   right of the officer.  (Wilcox Depo. at 51:23-25; Trenholm Depo. at 22:7-11; 22:23-23:4.)  In response,

26   Officer Trenholm put his hands up and said, " Hold on, wait a second."  (Trenholm Depo. at 22:11-12.)

27   Despite the command, Guadalupe continued to walk towards the back of the officers' vehicle, at which

28   point Officer Trenholm reached out, grabbed Guadalupe's elbow, and said, "Hey, stop just a second."

1   (Id. at 22:14-18.)  Moments later, Officer Wilcox reached over and grabbed Guadalupe's other arm.

2   (Wilcox Depo. at 52:9-18.)

3          Guadalupe struggled and tried to twist and pull himself away from the officers' grip.  (Wilcox

4   Depo. at 55:1-20.)  The officers yelled at Guadalupe to stop resisting.  (Id. at 72:19-24.)  Nevertheless,

5   Guadalupe continued to struggle and proceeded to move towards the front gate of a residence.  (See

6   Trenholm Depo. at 33:16-23.)  In an attempt to stop Guadalupe, Officer Wilcox tried to trip him four

7   times with a leg sweep.  (Wilcox Depo. at 101:14-25.)  Officer Wilcox also tried to take Guadalupe to

8   the ground using his body weight.  (Id. at 79:15-17; Trenholm Depo. at 39:7-19.)  Both officers were

9   unsuccessful, however, and at one point Guadalupe managed to get through the gate, run up the stairs

10  of the residence, and open the residence's metal screen door.  (Wilcox Depo. at 77:5-11; 78:4-8; 84:17-

11  85:7; Trenholm Depo. at 43:4-12.)  Officer Wilcox was concerned Guadalupe was carrying a weapon.

12  (Wilcox Decl. ¶ 17.)  Officer Trenholm contacted dispatch for back-up assistance.  (Trenholm Depo. at

13  47:20-48:9.)

14         Before Guadalupe was able to enter the residence, Officers Wilcox and Trenholm were able to

15  regain some control of Guadalupe, and the three struggled on the front porch.  (Wilcox Depo. at 84:23-

16  85:7; Trenholm Depo. at 45:10-13.)  Paula ran out of the house and said, in English, "My son is sick."

17  (Paula Depo. at 54:10-15; Wilcox Depo. at 86:21-23.)  Paula also yelled and pleaded with the officers

18  in Spanish.  (Paula Depo. at 54:10-15; Wilcox Depo. at 86:21-23.)  After struggling on the front porch

19  for less than a minute, Guadalupe and the two officers fell off the porch.  (Trenholm Depo. at 47:1-3;

20  Wilcox Depo. at 87:7-12.)  While on the ground, Officer Trenholm was able to restrain Guadalupe's

21  upper body, and Officer Wilcox was able to restrain Guadalupe's lower body.  (Wilcox Depo. at 88:25-

22  89:6; Trenholm Depo. at 54:13-25.)  The officers held Guadalupe against the ground and porch stairs

23  in an approximately 45 degree angle with Guadalupe's head facing downward and waited for backup

24  assistance to arrive.  (Trenholm Depo. at 53:15-54:6.)

25         After about a minute, Officer Trenholm felt the tension in Guadalupe's arm release.  (See id. at

26  55:15-24.)  Believing that Guadalupe had tired, the officers rolled Guadalupe slightly over and applied

27  handcuffs.  (Id. at 55:25-56:2, 58:11-20.)  The officers then sat Guadalupe upright.  (Wilcox Depo. at

28  102:8-9.)  At that point, Officer Wilcox realized that Guadalupe had vomited and lost consciousness,

1  and he therefore instructed Officer Trenholm to remove the handcuffs.  (Id. at 102:1-103:4; Trenholm

2  Depo. at 59:9-25.)  Officer Trenholm immediately complied and then determined that Guadalupe was

3  in fact not breathing and did not have a pulse.  (Wilcox Depo. at 103:4-5; Trenholm Depo. at 61:19-

4  62:6.)  Officer Wilcox contacted dispatch to summon the paramedics.  (Wilcox Depo. at 103:5-7.)  The

5  two officers then administered a cardiopulmonary resuscitation ("CPR") technique, which successfully

6  revived Guadalupe's breathing and pulse within fifteen to thirty seconds.  (Id. at 103:8-13; Trenholm

7  Depo. at 62:22-24, 65:12-66:3.)  An ambulance arrived a minute or two later, and Guadalupe was taken

8  to the hospital.  (Trenholm Depo. at 66:10-17; 68:6-9.)

9      Paula did not see any of this occur.  (See Paula Depo. at 61:19-23.)  When backup assistance

10  arrived at the scene, they took Paula back into the house.  (Id. at 62:4-11.)  Paula had some difficulty

11  breathing and some pain in her chest while she sat in her house, but at the time, she did not believe that

12  she needed an ambulance.  (Id. at 63:14-23; 64:4-6.)  However, when Paula visited Guadalupe in the

13  hospital later that night, her breathing difficulties worsened, and she was admitted to the hospital for a

14  heart attack.  (Id. at 68:5-15; Flores Depo. at 67:21-24.)

15      **C.    Procedural History**

16      Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 and are now proceeding on their first

17  amended complaint.  Therein, Plaintiffs assert the following claims: (1) unlawful detention and arrest

18  in violation of the Fourth Amendment against Officers Wilcox and Trenholm; (2) the use of excessive

19  force in violation of the Fourth Amendment against Officers Wilcox and Trenholm; (3) deprivation of

20  adequate medical care in violation of the Fourth and Fourteenth Amendments against Officers Wilcox

21  and Trenholm; (4) interference with a familial relationship in violation of the Fourteenth Amendment

22  against Officers Wilcox and Trenholm; (5) municipal liability for unconstitutional customs or policies

23  against the City; (6) false imprisonment against Officer Wilcox, Officer Trenholm, and the City; (7)

24  battery against Officer Wilcox, Officer Trenholm, and the City; (8) negligence against Officer Wilcox,

25  Officer Trenholm, and the City; and (9) the intentional infliction of emotional distress against Officer

26  Wilcox, Officer Trenholm, and the City.

27      On October 24, 2011, the City and Officer Wilcox filed the now pending motion for summary

28  judgment.  The City and Officer Wilcox move for summary judgment on all the claims asserted against

1    them.  Plaintiffs filed an opposition to the motion on November 28, 2011, to which the City and Officer

2    Wilcox filed a reply on December 5, 2011.  On December 8, 2011, the Court found this matter suitable

3    for decision without oral argument and therefore, pursuant to Local Rule 230(g), the Court vacated the

4    hearing scheduled for this matter.

5    **II.    LEGAL STANDARD**

6         Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

7    and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

8    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one which

9    may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

10   A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor

11   of the nonmoving party.  Id.

12        A party seeking summary judgment "always bears the initial responsibility of informing the

13   district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

14   answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

15   demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

16   323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an

17   issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

18   the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue

19   as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

20   by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing

21   Celotex, 477 U.S. at 323).

22        If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

23   material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v.

24   Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original).  The nonmoving party must

25   go beyond the allegations set forth in its pleadings.  See Fed. R. Civ. P. 56(c).  "[B]ald assertions or a

26   mere scintilla of evidence" will not suffice.  Stefanchik, 559 F.3d at 929.  Indeed, the mere presence of

27   "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary

28   judgment.   Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Where

1   the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

2   is no 'genuine issue for trial.'" Id. at 587 (quoting First National Bank of Arizona v. Cities Servs. Co.,

3   391 U.S. 253, 289 (1968).

4       In resolving a summary judgment motion, "the court does not make credibility determinations

5   or weigh conflicting evidence." Soremekun, 509 F.3d at 984.  That remains the province of the jury.

6   See Anderson, 477 U.S. at 255.  Instead, "[t]he evidence of the [nonmoving party] is to be believed, and

7   all justifiable inferences are to be drawn in [its] favor." Id.  Inferences, however, are not drawn out of

8   the air; the nonmoving party must provide a factual predicate from which the inference may justifiably

9   be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

10  810 F.2d 898, 902 (9th Cir. 1987).

11  **III.    EVIDENTIARY OBJECTIONS**

12          **A.    Declaration of Robert Nevarez**

13      Officer Wilcox and the City provide a declaration from Robert Nevarez, the Deputy Chief of

14  Police for the Fresno Police Department.  Plaintiffs object to the declaration and argue that it should be

15  stricken because Mr. Nevarez was never listed as a lay or expert witness in any of the defendants' Rule

16  26 disclosures.

17      Pursuant to Federal Rule of Civil Procedure 26, a party must disclose to the other parties the

18  name of each individual likely to have discoverable information or the identity of any expert witness it

19  may use at trial.  Fed. R. Civ. P. 26(a)(1)(A)(i) & 26(a)(2)(A).  In addition, "[a] party who has made a

20  disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the

21  party learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P.

22  26(e)(1).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e),

23  the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the

24  failure was substantially justified or is harmless." Fed. R. Civ. P.  37(c)(1).  Exclusion of improperly

25  disclosed information is self-executing to provide a strong inducement for disclosure of material. Yeti

26  by Molly, Ltd., v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  Therefore, the burden

27  falls on the party opposing exclusion to show substantial justification or harmlessness. Torres v. City

28  of Los Angeles, 548 F.3d 1197, 1213 (9th Cir. 2008).

6

1    Officer Wilcox and the City apparently concede that Mr. Nevarez was not identified in any of

2    their Rule 26 disclosures.  However, they argue that Plaintiffs waived any objection to Mr. Nevarez'

3    declaration by agreeing to Joint Statement of Undisputed Fact No. 7, which relies entirely on evidence

4    provided by Mr. Nevarez' declaration.  Moreover, Officer Wilcox and the City contend that Plaintiffs

5    essentially had an opportunity to depose Mr. Nevarez but elected not to.  The defendants suggest that

6    had Plaintiffs noticed a deposition for a person most knowledgeable on the issue of police polices and

7    practices, as the Plaintiffs suggested that they would do in their own disclosures, the defendants would

8    have produced Deputy Chief Nevarez.

9    The defendants' arguments are unpersuasive.  First, even if Plaintiffs ultimately do agree with

10   *some* of Mr. Nevarez' statements, they still are prejudiced by their inability to examine the witness with

11   respect to *all* of his opinions.  Second, the underlying purpose of Rule 26's disclosure requirements is

12   to provide parties notice.  See Ciomber v. Cooperative Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008).  The

13   fact that Plaintiffs indicated that they might call a witness to support their case does not eviscerate the

14   need for the defendants to put Plaintiffs on notice that they too intend to call the witness to support their

15   case.  Accordingly, because the defendants have failed to demonstrate that their non-disclosure was

16   justified or harmless, the declaration of Deputy Chief Nevarez is stricken.

17              **B.     Declaration of Roger A. Clark**

18   In connection with their opposition, Plaintiffs provide a declaration from Roger A. Clark.  Mr.

19   Clark is purportedly an expert in police practices and tactics.  Officer Wilcox and the City object to the

20   declaration because, among other reasons, Mr. Clark lacks the knowledge, skill, experience, training,

21   or education to qualify him as an expert in current police procedures regarding force, administration,

22   mental health, and medical treatment.

23   A proposed expert witness must qualify as an expert "by knowledge, skill, experience, training,

24   or education."  Fed. R. Evid. 702.  The requirement is broadly phrased and liberally construed.  See

25   Thomas v. Newton Int'l Enters., Inc., 42 F.3d 1266, 1269 (9th Cir. 1994).  Here, Mr. Clark asserts in his

26   declaration that his qualifications include: (1) twenty-seven years in the Los Angeles County Sheriff's

27   Department (six years as a Deputy Sheriff and fifteen years as a Lieutenant); (2) an advanced certificate

28   in California's Peace Officer Standards and Training ("POST"); (3) graduation of the POST Command

1    College; (4) past service as a training member in the Los Angeles County Sheriff's Department Patrol

2    School; and (5) employment as an expert witness in numerous cases regarding police procedures and

3    tactics.  (Clark Decl. ¶¶ 1-8.)  These credentials are sufficient to qualify Mr. Clark as an expert.  While

4    the Court acknowledges that Mr. Clark has been retired for almost twenty years now, this fact alone does

5    not preclude him from being qualified to provide expert testimony on police procedures and uses of

6    force.  See, e.g., Cotton v. City of Eureka, C 08-04386 (SBA), 2010 U.S. Dist. LEXIS 136270, at *43

7    (N.D. Cal. Dec. 14, 2010) (declining to preclude Mr. Clark from testifying as a qualified expert despite

8    his lack of training since 1993).  Accordingly, at this time, the Court declines to strike the declaration

9    of Mr. Clark wholesale.

10        **C.        Other Objections**

11        The parties assert various other general objections to the evidence.  The Court need not rule on

12   these individually.  Each objection was carefully considered and sustained where meritorious.

13   **IV.    DISCUSSION**

14        **A.        Section 1983 Claims**

15        Plaintiffs bring their federal claims pursuant to 42 U.S.C. § 1983.  Although § 1983 does not

16   create substantive rights in of itself, it does provide a vehicle for a plaintiff to bring federal statutory or

17   constitutional challenges to actions by state and local officials.  Anderson v. Warner, 451 F.3d 1063,

18   1067 (9th Cir. 2006).  To prevail under § 1983, a plaintiff must prove that (1) the defendants deprived

19   him of a federal statutory or constitutional right, and (2) the defendants acted under color of state law.

20   Id. (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

21        **1.        Fourth Amendment – Unlawful Detention and Arrest**

22        Plaintiffs claim that Officer Wilcox unlawfully detained and arrested Guadalupe in violation of

23   the Fourth Amendment.  Under the Fourth Amendment, law enforcement officers may initiate a brief,

24   investigatory detention of a person only if there is reasonable suspicion "that criminal activity may be

25   afoot."  United States v. Johnson, 581 F.3d 994, 999 (9th Cir. 2009) (citations omitted).  See Terry v.

26   Ohio, 392 U.S. 1, 30 (1968).  The officers may then arrest the detainee only if he provides the officers

27   with probable cause for an arrest.  See Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984).  "Probable

28   cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to

1   lead a person of reasonable caution to believe that [a criminal] offense has been or is being committed

2   by the person being arrested."   Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009)

3   (citations omitted).

4         In moving for summary judgment, Officer Wilcox maintains that there was sufficient basis for

5   detaining, and later arresting, Guadalupe.  According to Officer Wilcox's version of the events, he and

6   Officer Trenholm observed Guadalupe walking in the middle of the street and believed Guadalupe to

7   be in violation of California Vehicle Code section 21954(a), pedestrian outside the crosswalk.  Based

8   thereon, Officer Wilcox argues that there was reasonable suspicion to detain Guadalupe to advise him

9   that his conduct was unsafe and to, perhaps, issue a traffic citation.  Moreover, Officer Wilcox argues

10   that once Guadalupe began evading the officers' attempts at detaining him, the officers had probable

11   cause to arrest Guadalupe under California Penal Code section 148(a)(1), which makes it an offense to

12   resist or obstruct a peace officer discharging his duties.

13         Plaintiffs, on the other hand, maintain that Guadalupe never walked in the middle of the street

14   on the night of December 12, 2008.  In fact, Plaintiffs assert that Guadalupe never left the house that

15   night on his own volition.  According to Paula, she had asked Guadalupe to take out the garbage, but

16   before Guadalupe was able to exit the house, the officers pulled Guadalupe through the front door and

17   pinned him to the ground.  (Paula Depo. at 43:12-16, 43:23-44:12.)  Paula testified that she ran to the

18   front door and pleaded with the officers to not hurt Guadalupe, but to no avail.  (Id. at 43:4-9.)  Based

19   on this evidence, Plaintiffs argue that Officer Wilcox and Trenholm detained and arrested Guadalupe

20   for no reason and without probable cause.

21         The parties ultimately present starkly different versions of the events.  Although Officer Wilcox

22   invites the Court to discount Paula's version of the events because it requires "extreme" leaps in logic,

23   such a credibility determination would be inappropriate.  "A judge must not grant summary judgment

24   based on his determination that one set of facts is more believable than another."  Nelson v. City of

25   Davis, 571 F.3d 924, 929 (9th Cir. 2009).  Instead, "[t]he evidence of the [nonmoving party] is to be

26   believed, and all justifiable inferences are to be drawn in [its] favor."  Anderson, 477 U.S. at 255.  See

27   Soremekun, 509 F.3d at 984.  Here, assuming the truth of Paula's version of the events, a reasonable

28   juror could conclude that Guadalupe's detention and arrest were not supported by reasonable suspicion

9

1   or probable cause in violation of the Fourth Amendment.  Accordingly, Officer Wilcox is not entitled

2   to summary judgment on this claim.

3                          **2.      Fourth Amendment – Excessive Force**

4          Plaintiffs claim that Officer Wilcox used excessive force against Guadalupe in violation of the

5   Fourth Amendment.  Claims against law enforcement officers for the use of excessive force during a

6   seizure are analyzed under the Fourth Amendment's "objective reasonableness" standard.  Graham v.

7   Connor, 490 U.S. 386, 388 (1989); Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001).

8   The relevant question is "whether the officers' actions are 'objectively reasonable' in light of the facts

9   and circumstances confronting them, without regard to [the officers'] intent or motivation."  Graham,

10  490 U.S. at 397.  In making this determination, the trier of fact must balance "the nature and quality of

11  the intrusion on the individual's Fourth Amendment interests against the countervailing governmental

12  interests at stake."  Id. at 396 (internal quotation marks and citations omitted).  In other words, "the type

13  and amount of force inflicted" must be evaluated and weighed against such factors as "(1) the severity

14  of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or

15  others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  Chew v.

16  Gates, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing Graham, 490 U.S. at 396).  See Jackson, 268 F.3d at

17  651-52.

18         Like Plaintiffs' unlawful detention and arrest claim, there are numerous factual disputes that

19  preclude summary judgment on Plaintiffs' excessive force claim.  Turning first to the type and amount

20  of force inflicted, the parties agree that at one point, Officers Wilcox and Trenholm pinned Guadalupe

21  to the ground on Plaintiffs' front porch.  However, the parties dispute how long the altercation lasted.

22  According to Officer Wilcox, he and Officer Trenholm restrained Guadalupe in a prone position for no

23  longer than a minute.  (Wilcox Depo. at 95:4-20; Trenholm Depo. at 53:14-21, 55:15-20.)  According

24  to Plaintiffs, the two officers pinned Guadalupe to the ground for as long as ten minutes.  (See Paula

25  Depo. at 57:21-58:5, 59:6-17.)

26         Turning next to the countervailing governmental interests at stake, the parties dispute whether

27  the officers advanced any legitimate governmental interest by using force against Guadalupe.  Officer

28  Wilcox concedes that the criminal activity underlying the incident was not severe.  (Defs.' Mem. of P.

                                                  10

1   & A. at 12.)  Nevertheless, in Officer Wilcox's view, Guadalupe posed a threat to the safety of him and

2   others.  Officer Wilcox argues that Guadalupe continuously resisted and evaded the officers' attempts

3   at detaining him; that Officer Wilcox was concerned throughout the incident that Guadalupe might be

4   carrying a weapon because his hands kept reaching for his waistband area; and that Guadalupe posed

5   a threat to others when he fled through the front gate of an unknown residence and attempted to enter

6   the residence's front door.

7        In Plaintiffs' view, any force used against Guadalupe was unjustified because he committed no

8   crime and posed no danger to others.  Again, under Plaintiffs' version of the events, the officers pulled

9   Guadalupe through the front door and pinned him to the ground for no reason.  Plaintiffs maintain that

10   Guadalupe never walked in the middle of the street on the night of December 12, 2008, and Guadalupe

11   never evaded the officers' attempts at detaining him for a traffic violation.  Moreover, Plaintiffs argue

12   that even after the officers pinned Guadalupe to the ground, Guadalupe did not resist the officers and

13   did not fight back.  (Paula Depo. at 110:3-5.)

14        The parties also dispute whether Officer Wilcox should have taken into account Guadalupe's

15   mental disability in determining whether to use force against Guadalupe.  See Drummond v. City of

16   Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003) ("[A] detainee's mental illness must be reflected in any

17   assessment of the government's interest in the use of force[.]") (citing Deorle v. Rutherford, 272 F.3d

18   1272, 1282-83 (9th Cir. 2001)).  Officer Wilcox asserts that at the time of the altercation, he did not

19   know that Guadalupe had a mental disability.  (Wilcox Decl. ¶ 13.)  Plaintiffs counter that Paula told the

20   officers, in English, that Guadalupe was "sick."  (Paula Depo. at 54:10-15.)  Plaintiffs emphasize that

21   Officer Trenholm simply responded, "It's too late for that now," and he and Officer Wilcox continued

22   to restrain Guadalupe with force.  (See Wilcox Depo. at 87:2-12.)

23        These factual disputes preclude summary judgment.  Assuming the truth of Plaintiffs' evidence

24   and version of the events, Officer Wilcox pinned Guadalupe to the ground for up to ten minutes for no

25   apparent reason and despite knowing that Guadalupe suffered from a mental disability.  A reasonable

26   juror could conclude from this that the use of force was severe, that the use of force was not justified by

27   a legitimate governmental interest, and, therefore, that the use of force was not objectively reasonable.

28   Accordingly, Officer Wilcox is not entitled to summary judgment on this claim.

1

### 3.        Fourth Amendment – Denial of Medical Care

2          Plaintiffs claim that Officer Wilcox failed to provide or summon medical care for Guadalupe

3  despite the fact that Guadalupe suffered serious and obvious injuries as a result of the altercation.  The

4  Ninth Circuit analyzes claims regarding deficient medical care during and immediately following an

5  arrest under the Fourth Amendment.  See Tatum v. City and County of San Francisco, 441 F.3d 1090,

6  1098-99 (9th Cir. 2006) (explaining that while the Supreme Court has analyzed such claims under the

7  Due Process Clause of the Fourteenth Amendment in the past, it appears that the Fourth Amendment

8  is the proper authority following the decision in Graham v. Connor, 490 U.S. 386 (1989)).  Cf. City of

9  Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983) (the Due Process Clause of the

10  Fourteenth Amendment requires officers to provide medical care to individuals who have been injured

11  while being apprehended by the police, and that right is at least as great as the protections afforded to

12  convicted prisoners under the Eighth Amendment).  The Fourth Amendment requires law enforcement

13  officers to provide objectively reasonable post-arrest care to an apprehended individual.  Tatum, 441

14  F.3d at 1099.  Although the Ninth Circuit has not prescribed the precise contours of what constitutes

15  objectively reasonable post-arrest care, it has made clear that "a police officer who promptly summons

16  . . . necessary medical assistance has acted reasonably for purposes of the Fourth Amendment[.]"  Id.

17  See Revere, 463 U.S. at 245 ("Whatever the standard may be, [the defendant] fulfilled its constitutional

18  obligation by seeing that [the apprehended individual] was taken promptly to the hospital that provided

19  the treatment necessary for his injury.").

20          Officer Wilcox offers evidence showing that Guadalupe was provided objectively reasonable

21  post-arrest medical attention.  Officer Wilcox testified in his deposition that he and Officer Trenholm

22  realized that Guadalupe had vomited and lost consciousness only after Guadalupe was handcuffed and

23  set upright on the front porch.  (Wilcox Depo. at 102:1-23.)  Officer Wilcox testified that in response,

24  he (1) immediately instructed Officer Trenholm to remove the handcuffs from Guadalupe, (2) called

25  dispatch to summon the paramedics, and (3) administered a CPR technique that successfully revived

26  Guadalupe's breathing and pulse.  (Id. at 103:2-13.)  According to Officer Trenholm, the paramedics

27  arrived a minute or two later, and Guadalupe was immediately taken to the hospital to receive medical

28  treatment.  (Trenholm Depo. at 66:10-17; 68:6-9.)

1    Plaintiffs counter that Officer Wilcox should have monitored Guadalupe's breathing and pulse

2  sooner than he did. (Pls.' Mem. of P. & A. at 19.)  The Fourth Amendment, however, does not "require

3  an officer to provide what hindsight reveals to be the most effective medical care [or precautions] for

4  an arrested suspect."  Tatum, 441 F.3d at 1098.  All that is required of an officer is that he reasonably

5  respond if and when he becomes aware of a suspect's deteriorating medical condition.  See id. (finding

6  summary judgment appropriate "[a]bsent evidence in the summary judgment record that the officers

7  ignored [the plaintiff's] deteriorating medical condition").  Here, Officer Wilcox testified that once he

8  realized that Guadalupe had vomited and lost consciousness, he immediately called for the paramedics

9  and performed CPR.  Plaintiffs fail to point to any evidence that calls into question the promptness of

10  Officer Wilcox's response.

11    The undisputed evidence therefore shows that Officer Wilcox provided Guadalupe objectively

12  reasonable post-arrest medical care.  Not only did Officer Wilcox promptly call for the paramedics, he

13  also administered a CPR technique that successfully revived Guadalupe's breathing and pulse.  See

14  Tatum, 441 F.3d at 1099 ("[A] police officer who promptly summons . . . necessary medical assistance

15  has acted reasonably . . . [under] the Fourth Amendment[.]").  Accordingly, the Court concludes that

16  Officer Wilcox is entitled to summary judgment on this claim.[1]

17            **4.      Fourteenth Amendment – Deprivation of a Familial Relationship**

18    Paula claims that Officer Wilcox's actions deprived her of a familial relationship.  The Ninth

19  Circuit recognizes that a parent has a Fourteenth Amendment liberty interest in the companionship and

20  society of his or her child.  Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).  A deprivation of

21  that interest may arise to a violation of the substantive component of the Fourteenth Amendment.  See

22  Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998).  To prevail on such a

23  claim, the plaintiff must establish that the defendant's conduct in causing the deprivation "shocks the

24  conscience."  Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).  "What state of mind shocks the

25  _____

26    [1] Plaintiffs also note that the police officers who arrived in response to Officer Trenholm's call for assistance failed to summon medical attention for Paula and precluded her from leaving her house for hours, despite being aware that she was experiencing chest pains and breathing difficulties. (Pls.' Mem. of P. & A. at 19.)  However, even if true, these facts are

27  irrelevant to this claim.  As the City and Officer Wilcox note in their reply, the amended complaint does not assert a claim for the deprivation of medical care with respect to *Paula*; it only asserts that *Guadalupe* was denied medical attention in the

28  course of his arrest.

conscience depends on the circumstances[.]" Provencio v. Vazquez, 258 F.R.D. 626, 640 (E.D. Cal. 2009). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment based on an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Wilkinson, 610 F.3d at 554 (citing Porter, 546 F.3d at 1137, 1140).

Once again, the parties' starkly different accounts of the events preclude summary judgment. If Plaintiffs' version of the events is to be believed, Officer Wilcox was not facing a rapidly escalating law enforcement situation requiring a snap decision on whether to use force. Rather, under Plaintiffs' version of the events, Officer Wilcox deliberately, and for no reason, pinned Guadalupe to the ground in a prone position for as long as ten minutes, causing Guadalupe to become comatose. A reasonable juror could conclude from this that Officer Wilcox acted with deliberate indifference to Guadalupe's safety and, therefore, that Officer Wilcox's conduct shocks the conscience. See Wilkinson, 610 F.3d at 554. Accordingly, Officer Wilcox is not entitled to summary judgment on this claim.

### 5.   Monell Liability

Plaintiffs seek to impose liability on the City under 42 U.S.C. § 1983. Local governments are "persons" subject to liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A local government, however, cannot be held liable solely because it employs a tortfeasor on a theory of *respondeat superior*. Id. at 691. Rather, the local government "itself must cause the constitutional deprivation." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992). Thus, to prevail on a § 1983 claim against a local government, a plaintiff must generally show that: (1) there was a violation of the plaintiff's constitutional rights; (2) the local government had a policy, procedure, or custom; (3) the policy, procedure, or custom amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy, procedure, or custom was the moving force behind the constitutional violation. See Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

In moving for summary judgment, the City argues that it does not have, nor is there evidence to show that it has, a policy, procedure, or custom that caused a deprivation of Plaintiffs' constitutional

rights.[2]  Plaintiffs counter that: (a) the City maintains policies and customs that encourage its police officers to disregard a suspect's mental illness; (b) the City failed to adequately train its police officers in the proper use of force, specifically the proper use of restraining methods; and (c) the City ratified Officer Wilcox's unconstitutional actions as its own.

### a.      Policy to Disregard Mental Illness

A policy, procedure, or custom that is sufficient to impose liability on a local government may be demonstrated in one of three ways: (1) an express policy; (2) a longstanding or widespread practice or custom; or (3) action by a final policymaker.  See Delia v. City of Rialto, 621 F.3d 1069, 1081 (9th Cir. 2010); see also Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002). Here, Plaintiffs fail to produce any evidence of an express policy, a longstanding practice, or action by a final policymaker demonstrating that the City encourages its officers to disregard a suspect's mental illness during an arrest.  Accordingly, the City is entitled to summary judgment on Plaintiffs' Monell claims in this respect.

### b.      Failure to Train in the Use of Restraints

A policy of inaction, such as a failure to train employees, can be the basis for liability against a local government where it "amounts to deliberate indifference to the rights of persons with whom the [untrained] employee comes into contact."  Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006).  See also City of Canton v. Harris, 489 U.S. 378, 388 (1989).  "Deliberate indifference is a stringent standard of fault, requiring proof that a [government] actor disregarded a known or obvious consequence of his action."  Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). This "ordinarily" requires a plaintiff to prove a pattern of similar constitutional violations by untrained employees.  Connick v. Thompson, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).  See also Bryan County, 520 U.S. at 409.  In this way, a local government's continued adherence to an approach that it knows or should know failed to prevent unconstitutional conduct by its employees can be said to have been the result of deliberate indifference.  Connick, 131 S. Ct. at 1360.

---

[2] The City primarily relies on the declaration of Robert Nevarez as support for its argument.  Although the Court has stricken this declaration, the City's argument that there is no evidence to show that it has a policy, procedure, or custom that caused a deprivation of Plaintiffs' constitutional rights is sufficient in of itself to carry its burden on summary judgment and to shift the burden onto Plaintiffs to produce affirmative evidence of a policy, procedure, or custom.  See Soremekun, 509 F.3d at 984; Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).

"[I]n a *narrow* range of circumstances," a pattern of similar violations may not be necessary to show deliberate indifference."  Id. (quoting Bryan County, 520 U.S. at 409) (emphasis added).  If the need for more or different training is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," a local government may be held liable without proof of a pre-existing pattern of violations.  City of Canton, 489 U.S. at 390.  See Connick, 131 S. Ct. at 1361.  For example, if a city arms its police force with firearms and deploys the officers into the public without training them in the constitutional limitations on the use of deadly force, the city may be held liable under § 1983 for such a patently obvious deficiency in its training.  City of Canton, 489 U.S. at 390 n.10.

Here, Plaintiffs argue that the City maintains an obvious deficiency in its training regarding the use of restraints by its police officers.  As evidence, Plaintiffs point to the testimony of Officer Wilcox wherein he asserts that the City trains its officers that control holds are not uses of force:

> Q.   What other verbalization did you use before you decided to use force?
>
> A.   Well, I'm wondering what your definition of force is.  Force to me is not grabbing ahold of someone's arm.  We utilized stop resisting repeatedly, go to the ground, prior to any type of force being used [to] the best of my recollection.
>
> Q.   So your understanding is that if someone does not respond to you when you say come here and if you grab them that's not a use of force?
>
> A.   My understanding[:] that is a control hold.
>
> Q.   A control hold is not considered – in the categories of use of force in your training[–] that was never taught to you that that is a use of force when you grab someone?
>
> A.   No.
>
> Q.   That's the training that you received in the City of Fresno that that is not considered use of force?
>
> A.   Yes.

(Wilcox Depo. at 62:15-63:15) (objections omitted).  In essence, Officer Wilcox asserts that the City trains its officers to believe that they may restrain a citizen simply if the citizen fails to comply with the officer's summon.  This is an inaccurate statement of the law.  See Graham, 490 U.S. at 388.  Thus, a reasonable juror could conclude that such deficient training was highly likely to result in the violation of constitutional rights.  See City of Canton, 489 U.S. at 390.  Accordingly, the City is not entitled to summary judgment on this matter.

1    **c.    Ratification of Unconstitutional Conduct**

2        In order to show ratification, "a plaintiff must prove that the 'authorized policymakers approve

3    a subordinate's decision and the basis for it.'"   Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999)

4    (quoting St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).   In other words, a policymaker must make

5    a "conscious, affirmative choice" to ratify the conduct in question.   Gillette, 979 F.2d at 1347.   "[I]t is

6    well-settled that a policymaker's mere refusal to overrule a subordinate's completed [unlawful] act does

7    not constitute approval."   Christie, 176 F.3d at 1239.

8        Plaintiffs argue that the City ratified Officer Wilcox's unconstitutional conduct as its own by

9    failing to discipline Officer Wilcox.   There are several flaws in this argument.   First, a single failure to

10   discipline a subordinate is generally insufficient to demonstrate ratification.   See Haugen v. Brosseau,

11   351 F.3d 372, 393 (9th Cir. 2003) (citing Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989)) ("As

12   we have indicated before, we cannot hold that the failure of a police department to discipline a specific

13   instance is an adequate basis for municipal liability under Monell.").   Second, there is no evidence that

14   an authorized policymaker had knowledge of Officer Wilcox's conduct yet failed to discipline him.   It

15   is the policymaker's authority to make final decisions on behalf of a local government that makes his

16   actions capable of imposing liability on it.   See Praprotnik, 485 U.S. at 127.   Third, Mr. Clark's bald

17   statement that "it appears" that the police department ratified Officer Wilcox's conduct is conclusory

18   and entitled to no weight.   See Soremekun, 509 F.3d at 984 ("Conclusory, speculative testimony in

19   affidavits and the moving papers is insufficient to . . . defeat summary judgment.").   Accordingly, the

20   City is entitled to summary judgment on this matter.

21   **B.    Qualified Immunity**

22       Officer Wilcox maintains that he is entitled to qualified immunity.   Qualified immunity shields

23   government officials from liability for civil damages, "insofar as their conduct does not violate clearly

24   established statutory or constitutional rights of which a reasonable person would have known."   Harlow

25   v. Fitzgerald, 457 U.S. 800, 818 (1982).   The underlying purpose of qualified immunity is to balance

26   "the need to hold public officials accountable when they exercise power irresponsibly and the need to

27   shield officials from harassment, distraction, and liability when they perform their duties reasonably."

28   Pearson v. Callahan, 555 U.S. 223, 231 (2009).

17

1     Determining whether an official is entitled to qualified immunity requires a two-part analysis

2   which may be taken in any order. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson, 555 U.S. at

3   232-36. First, the court must decide whether the facts alleged, when taken in the light most favorable

4   to the plaintiff, show that the defendant's conduct violated a statutory or constitutional right. Saucier,

5   533 U.S. at 201. Second, the court must determine whether that right was "clearly established." Id. A

6   right is clearly established if "it would be clear to a reasonable [official] that his conduct was unlawful

7   in the situation he confronted . . . or whether the state of the law [at the time of the violation] gave fair

8   warning to the official[] that [his] conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906

9   (9th Cir. 2002) (quotation marks and citations omitted). If the defendant's conduct did not violate a

10  statutory or constitutional right or if that right was not "clearly established," he is entitled to qualified

11  immunity. See Saucier, 533 U.S. at 201-02.

12     Here, the Court has already determined that Officer Wilcox is entitled to summary judgment on

13  Guadalupe's Fourth Amendment denial of medical care claim. Therefore, the Court need not address

14  qualified immunity as it relates to this claim. The Court has also already determined that a reasonable

15  juror could conclude from the evidence presented that Officer Wilcox violated (1) Guadalupe's Fourth

16  Amendment right to be free from unlawful detentions and arrests; (2) Guadalupe's Fourth Amendment

17  right to be free from excessive force; and (3) Paula's Fourteenth Amendment right to maintain familial

18  relationships. Thus, the only inquiry remaining is the second prong of the qualified immunity analysis:

19  whether Guadalupe's Fourth Amendment rights and Paula's Fourteenth Amendment right were clearly

20  established at the time of the violation.

21     The answer is undeniably yes. Under Plaintiffs' version of the events, Officer Wilcox arrested

22  and used force against Guadalupe for no reason. By 2008, no police officer could reasonably believe

23  that arresting a person without probable cause was lawful under the Fourth Amendment. See United

24  States v. Ortiz-Hernandez, 427 F.3d 567, 573 (9th Cir. 2005) ("Absent probable cause, a warrantless

25  arrest is illegal."). Nor could a police officer reasonably believe that the gratuitous use of force did not

26  run afoul the Fourth Amendment. See Graham, 490 U.S. at 396 (a police officer's use of force must be

27  reasonable). Lastly, the state of the law was clear by 2008 that a police officer violates an individual's

28  right under the Fourteenth Amendment by using excessive force against the individual's child, thereby

1    depriving the individual of the child's society.  See Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998)

2    ("To prove their Fourteenth Amendment claim, the [plaintiffs] had to prove that the Officers acted with

3    deliberate indifference to the [plaintiffs'] rights of familial relationship and society by using excessive

4    force against the [plaintiff-victim].").  Accordingly, for all these reasons, Officer Wilcox is not entitled

5    to qualified immunity on these claims.

6          **C.    State Law Claims**

7                **1.    False Imprisonment**

8          Guadalupe asserts claims against Officer Wilcox and the City for false imprisonment.  "Under

9    California law, the elements of a claim for false imprisonment are: (1) the nonconsensual, intentional

10   confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however

11   brief."  Young v. County of Los Angeles, 655 F.3d 1156, 1169 (9th Cir. 2011) (quoting Easton v. Sutter

12   Coast Hospital, 80 Cal. App. 4th 485, 496 (2000)).  If the arrest is lawful or the officer had reasonable

13   cause to believe that the arrest was lawful, the officer is immune from claims for false imprisonment.

14   Cal. Penal Code § 847(b).  See Blankenhorn v. City of Orange, 485 F.3d 463, 486-87 (9th Cir. 2007);

15   O'Toole v. Superior Court, 140 Cal. App. 4th 488, 510-11 (2006).

16         Officer Wilcox and the City contend that the officers had probable cause to arrest Guadalupe.

17   However, as explained above, Plaintiffs offer evidence to the contrary that is sufficient to demonstrate

18   a genuine issue of material fact on this issue.  According to Paula's deposition testimony, the officers

19   did not have any reason to detain or arrest Guadalupe.  Paula testified that the officers simply grabbed

20   Guadalupe, pulled him through the front door, pinned him to the ground, and proceeded to arrest him.

21   A reasonable juror could credit Paula's testimony and conclude that Officer Wilcox falsely imprisoned

22   Guadalupe and that the City is vicariously liable for Officer Wilcox's conduct.  See Cal. Gov. Code §

23   815.2(a) (a public entity is vicariously liable for injuries proximately caused by a public employee who

24   acted within the scope of his employment).  Accordingly, Officer Wilcox and the City are not entitled

25   to summary judgment on these claims.

26                **2.    Battery**

27         Guadalupe asserts claims against Officer Wilcox and the City for battery.  In the context of a

28   peace officer's use of force, "[a] state law battery claim is a counterpart to a federal claim of excessive

1   use of force," and similar standards apply.  Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 (2009).

2   See Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1274-75 (1998) (looking to the standards of a

3   federal excessive force claim to determine the burden of proof for a state law battery claim against an

4   officer).  To prevail on either claim, the plaintiff must demonstrate that the officer's use of force was

5   objectively unreasonable under the circumstances confronting the officer.  See Brown, 171 Cal. App.

6   4th at 527; Edson, 63 Cal. App. 4th at 1272.

7        Officer Wilcox and the City contend that Guadalupe's claims for battery must fail because the

8   force used against him was reasonable under the totality of the circumstances.  However, as explained

9   in its discussion of the excessive force claim, the Court is unable to reach that conclusion on summary

10  judgment based on the current record.  There are simply too many factual disputes.  Specifically, there

11  is a dispute as to whether Guadalupe walked in the middle of the street on the night of December 12,

12  2008 and then evaded the officers' attempts at detaining him; how long the officers pinned Guadalupe

13  to the ground; and whether the officers were aware that Guadalupe suffered from a mental disability.

14  These disputes preclude summary judgment.  See Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)

15  ("Because [the excessive force inquiry] nearly always requires the jury to sift through disputed factual

16  contentions, . . . we have held on many occasions that summary judgment . . . in excessive force cases

17  should be granted sparingly.").  Accordingly, Officer Wilcox and the City are not entitled to summary

18  judgment on these claims.[3]

19                    **3.    Negligence**

20       Guadalupe and Paula assert negligence claims against Officer Wilcox and the City.  The basic

21  elements of a negligence claim are: (1) the existence of a duty to exercise due care, (2) breach of that

22  duty, (3) causation, and (4) damages.  Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003); Wright

23  v. City of Los Angeles, 219 Cal. App. 3d 318, 344 (1990).  In this case, Guadalupe and Paula claim that

24  Officer Wilcox and the City breached a duty of care by (a) failing to properly assess the need for force

25  and the need to detain Guadalupe; (b) failing to provide prompt medical care for Guadalupe; (c) failing

26

27           [3] Office Wilcox's alternative argument, that he is entitled to immunity from Guadalupe's battery claim pursuant to
    California Government Code section 820.2, provides no differently.  Section 820.2, which provides immunity to public
28  employees for discretionary acts, does not shield a police officer who uses unreasonable force in making an arrest.  See
    Scruggs v. Haynes, 252 Cal. App. 2d 256, 266 (1967).  Here, there is a genuine dispute as to whether Officer Wilcox's use
    of force was reasonable.  Accordingly, Officer Wilcox is not entitled to immunity under section 820.2.

1   to exercise due care with respect to the infliction of emotional distress; (d) failing to properly hire, train,

2   and supervise law enforcement officers; (e) failing to monitor uses of force by officers; and (f) failing

3   to record the injuries that result from the use of force.

4   ### a.   Force, Detention, Arrest, and Medical Care

5   Officer Wilcox and the City argue that the negligence claims regarding the use of force against

6   Guadalupe, the detention and arrest of Guadalupe, and the provision of medical attention to Guadalupe

7   must fail because the record shows that Officer Wilcox acted reasonably toward Guadalupe. The Court

8   only partially agrees. As explained above, there is a genuine dispute as to whether Officer Wilcox acted

9   reasonably by using force against, detaining, and arresting Guadalupe. There is, however, no dispute

10  that Officer Wilcox provided Guadalupe with objectively reasonable post-arrest medical treatment.

11  Accordingly, Officer Wilcox and the City are entitled to summary judgment on Plaintiffs' negligence

12  claims to the extent that the claims are predicated on the alleged failure by Officer Wilcox to provide

13  Guadalupe with prompt medical attention. See Bukley v. Klein, 206 Cal. App. 2d 742, 751 (1962) (the

14  reasonableness inquiry under the Fourth Amendment is not materially different from the determination

15  of reasonableness for negligence).

16  ### b.   Infliction of Emotional Distress

17  Next, Officer Wilcox and the City argue that Paula cannot recover for any negligent infliction

18  of emotional distress because the heart attack she suffered was the result of seeing Guadalupe in the

19  hospital, not a result of witnessing the altercation itself. The Court is not persuaded. In California, a

20  plaintiff may recover for emotional distress caused by observing the negligent infliction of harm on a

21  third person only if the plaintiff "(1) is closely related to the injury victim; (2) is present at the scene of

22  the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim;

23  and (3) as a result suffers [severe] emotional distress[.]" Thing v. La Chusa, 48 Cal. 3d 644, 667-68

24  (1989). Here, there is sufficient evidence to show that Paula's heart condition was proximately caused

25  by witnessing the injury-producing event – the altercation between the officers and Guadalupe. To be

26  sure, the timing of Paula's hospitalization for a heart attack lends support to the defendants' argument.

27  However, it remains undisputed that after witnessing the officers use force against Guadalupe, Paula

28  suffered chest pains and breathing difficulties. Drawing all reasonable inferences in favor of Paula as

1    the non-moving party, a reasonable juror could conclude that Paula's heart trauma was induced at that

2    point, and not only after Paula saw Guadalupe comatose in the hospital.  Accordingly, Officer Wilcox

3    and the City are not entitled to summary judgment on this matter.  See Hoyem v. Manhattan Beach City

4    School Dist., 22 Cal. 3d 508, 520 (1978) ("Proximate cause . . . is generally a question of fact for the

5    jury[.]") (citation omitted).

6                        **c.    Hiring, Training, Supervising, Monitoring, and Recording**

7            Last, Officer Wilcox and the City argue that the negligence claims regarding inadequate hiring,

8    training, supervising, monitoring, and recording must fail because a public entity cannot be directly

9    liable for negligence absent a statute providing for such liability.  The Court agrees.  There is nothing

10   in the record to suggest that Officer Wilcox has any authority regarding hiring, training, or supervising

11   other police officers.  Nor is there any indication that Officer Wilcox is responsible for monitoring or

12   recording the use of force by other police officers.  Thus, it appears that Plaintiffs are attempting to hold

13   *the City* directly liable for these actions.  Plaintiffs, however, have provided no statutory authority for

14   pursuing such a claim.  See Cal. Gov. Code § 815 (a public entity cannot be held directly liable for an

15   injury unless such is provided for by a statute); Munoz v. City of Union City, 120 Cal. App. 4th 1077,

16   1112-15 (2004) (same).  Accordingly, Officer Wilcox and the City are entitled to summary judgment

17   on Plaintiffs' negligence claims to the extent that the claims are predicated on an alleged failure by the

18   defendants to adequately  hire, train, and supervise employees or an alleged failure to properly monitor

19   and record uses of force.  See, e.g., Sanders v. City of Fresno, 551 F. Supp. 2d 1149, 1181 (E.D. Cal.

20   2008) (dismissing claim for negligent hiring and training against the City of Fresno where the plaintiff

21   failed to identify a statute that imposed an express duty on the public entity to "not-negligently" hire and

22   train its employees).

23                        **4.    Intentional Infliction of Emotional Distress**

24           Guadalupe and Paula assert claims against Officer Wilcox and the City for intentional infliction

25   of emotional distress.  "A cause of action for intentional infliction of emotional distress exists when

26   there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

27   disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

28   emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's

1   outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire

2   & Rubber Co., 6 Cal. 4th 965, 1001 (1993)). See also Christensen v. Superior Court, 54 Cal. 3d 868,

3   903 (1991) (listing the same elements).

### a.    Extreme and Outrageous Conduct

5       Officer Wilcox and the City argue that where law enforcement officers use reasonable force in

6   executing a lawful arrest, such cannot constitute "outrageous conduct." As a general proposition, this

7   is true. See Graham, 490 U.S. at 396 ("[T]he right to make an arrest . . . necessarily carries with it the

8   right to use some degree of [reasonable] physical coercion . . . to effect it."). "A defendant's conduct

9   is 'outrageous' [only] when it is so 'extreme as to exceed all bound of that [which is] usually tolerated

10  in a civilized community.'" Hughes, 46 Cal. 4th at 1050-51 (quoting Potter, 6 Cal. 4th at 1001). Here,

11  however, there is a genuine dispute as to whether Officer Wilcox's use of force was reasonable under

12  the circumstances. Accordingly, Officer Wilcox and the City are not entitled to summary judgment on

13  this ground. See Blankenhorn, 485 F.3d 463 n.17 (excessive force may constitute outrageous conduct

14  and give rise to a claim for intentional infliction of emotional distress); Burns v. City of Redwood City,

15  737 F. Supp. 2d 1047, 1067 (N.D. Cal. 2010) (denying summary judgment on intentional infliction of

16  emotional distress claim where there was a genuine dispute as to whether the officers' use of force was

17  objectively reasonable).

### b.    Intent or Recklessness

19      Officer Wilcox and the City also argue that Paula's claim for intentional infliction of emotional

20  distress must fail because there is no evidence showing that Officer Wilcox's conduct was directed at

21  Paula or that it was done in reckless disregard of the probability of causing Paula emotional distress.

22  The Court is not persuaded. A plaintiff may recover for the intentional infliction of emotional distress

23  if the defendant is aware of the presence of the plaintiff, yet engages in outrageous conduct in reckless

24  disregard to the probability that it will cause the plaintiff severe emotional distress. See Christensen,

25  54 Cal. 3d at 905. Here, there is no dispute that Officer Wilcox was aware that Paula was present when

26  force was used against Guadalupe. Moreover, according to Paula's deposition testimony, at the time of

27  the altercation, she cried and pleaded with Officer Wilcox to not hurt Guadalupe and to let him free.

28  Nevertheless, according to Paula, the officers decided that it was "too late for that now" and continued

1    to use force against Guadalupe.  Drawing all reasonable inferences in favor of Paula as the non-moving

2    party, a reasonable juror could conclude from this that Officer Wilcox acted with reckless disregard to

3    the possibility that Paula would suffer severe emotional distress.  Accordingly, Officer Wilcox and the

4    City are not entitled to summary judgment on this basis.

5                        **c.      Severe Emotional Distress**

6            Finally, Officer Wilcox and the City maintain that Guadalupe and Paula have not demonstrated

7    that they have suffered severe emotional distress.  The defendants emphasize that neither Guadalupe nor

8    Paula are being treated by medical professionals for any emotional distress arising from the December

9    12, 2008 altercation.  (See Paula Depo. at 81:11-13; Edubijes Depo. at 107:24-108:2.)  The defendants

10   argue further that Guadalupe essentially acts the same now as he did before the altercation: he mostly

11   watches television, eats, and sleeps.  (See Edubijes Depo. at 62:17-64:12.)  Lastly, the defendants note

12   that during the Christmas of 2008, thirteen days after the altercation, Guadalupe appeared to be happy

13   and behaving as he usually did.  (See Flores Depo. at 82:14-84:12.)

14           "Severe emotional distress means emotional distress of such substantial . . . or enduring quality

15   that no reasonable [person] in civilized society should be expected to endure it."  Hughes, 46 Cal. 4th

16   at 1051 (quoting Potter, 6 Cal. 4th at 1004).  Turning first to Paula, there is sufficient evidence in the

17   record to show that Paula suffered emotional distress of substantial quality.  According to Paula, she

18   believed that her son was going to be killed.  (Paula Depo. at 40:13-15.)  Paula testified that during and

19   after the altercation between the officers and Guadalupe, she screamed, cried, needed to be calmed by

20   other police officers, suffered chest pains, and had difficulty breathing.  Moreover, as discussed above,

21   Paula's chest pains and breathing difficulties may have been symptomatic of a heart attack for which

22   Paula was later hospitalized.  Drawing all reasonable inferences in favor of Paula as the non-moving

23   party, a reasonable juror could conclude from this that Paula suffered severe emotional distress.  See

24   Kiseskey v. Carpenters' Trust for So. California, 144 Cal. App. 3d 222, 231 (1983) (allegation that the

25   plaintiff incurred a heart attack due to the defendants' conduct is sufficient to allege severe emotional

26   distress).  Accordingly, Officer Wilcox and the City are not entitled to summary judgment on Paula's

27   claim for intentional infliction of emotional distress.

28           As to Guadalupe, Plaintiffs point to the deposition testimony of Paula and Guadalupe's doctor,

                                                    24

J. Luis Bautista, as evidence of severe emotional distress.  Paula testified that since the altercation, she

has noticed that Guadalupe is afraid to go out of the house:

> Q.   Is your son Guadalupe any different now?  Does he act differently now than before the incident on December 12th?
>
> A.   Well, a little.
>
> Q.   Is he pretty much the same?
>
> A.   No.
>
> Q.   How is he different now from the way he was before December 12th?
>
> A.   That he's fearful to go out.
>
> Q.   How do you know that he's afraid to go out?
>
> A.   He doesn't say anything.
>
> Q.   So why do you think he's afraid to go out?
>
> A.   I think.

(Paula Depo. at 72:4-16.)  Dr. Bautista testified that since 1994, Guadalupe's mental disability has been

progressively deteriorating:

> Q.   Has his degree, this level of being mentally delayed we talked about, has that changed at all over the years from the time you first saw him [in 1994] to the present?
>
> A.   He's progressively getting worse.
>
>                                     * * *
>
> A.   I would probably say the last five, six years he's just deteriorated progressively.

(Bautista Depo. at 12:7-10, 23-24.)

A reasonable juror could not conclude from Plaintiffs' "scintilla" of evidence that Guadalupe

suffered, or continues to suffer, severe emotional distress.  Stefanchik, 559 F.3d at 929.  Dr. Bautista's

testimony sheds no light on what effect the December 12, 2008 incident has had on Guadalupe's mental

or emotional state.  Meanwhile, Paula's testimony shows, at most, that Guadalupe suffers some general

anxiety about leaving the house.[4]  Vague assertions of worry, anxiety, or concern are insufficient.  See

Hughes, 46 Cal. 4th at 1051.  The California Supreme Court has set a "high bar" with respect to what

---

[4] The Court notes that Paula does not assert that Guadalupe no longer leaves the house on his own.  He does.  (See Paula Depo. at 82:16-83:3.)  Paula simply asserts that she believes Guadalupe is anxious about doing so.

constitutes severe emotional distress.  Id.  Accordingly, in the absence of further evidence upon which Guadalupe's mental distress can be substantiated, Officer Wilcox and the City are entitled to summary judgment on Guadalupe's claim for intentional infliction of emotional distress.

**V.      CONCLUSION**

For all the reasons set forth above, this Court:

1.      GRANTS the motion for summary judgment with respect to Guadalupe's medical care claim under the Fourth Amendment.

2.      GRANTS the motion for summary judgment with respect to Plaintiffs' Monell claims to the extent that the claims are predicated on:

      a.      a policy, procedure, or custom encouraging police officers to disregard a suspect's mental illness; and

      b.      a ratification of Officer Wilcox's unconstitutional conduct.

3.      GRANTS the motion for summary judgment with respect to Plaintiffs' negligence claims to the extent that the claims are predicated on:

      a.      a failure to provide Guadalupe with prompt medical care;

      b.      a failure to properly hire, train, and supervise employees; and

      c.      a failure to monitor and record uses of force.

4.      GRANTS the motion for summary judgment with respect to Guadalupe's intentional infliction of emotional distress claim.

5.      DENIES the motion for summary judgment in all other respects.

**IT IS SO ORDERED.**

**Dated:      January 9, 2012**            _____/s/ Lawrence J. O'Neill_____
                                              UNITED STATES DISTRICT JUDGE